LORENZO D. MONROE, plaintiff in error, *vs.* JAMES A. FOSTER, defendant in error.

Where A approached B for the loan of money, offering a mortgage upon property to secure the repayment, and B declined, but said that A could get the money if he would *deed him* the property, and A made an absolute deed, taking B's bond to *deliver back the deed* on the payment by A of a sum which was just the amount of the money got by A with a certain amount per month rent, and the possession was not changed in fact, nor the deed recorded:

*Held*, That whether the transaction was a sale with a right in the vendor to repurchase, or whether the whole was a ruse devised to evade the usury laws and to take a security for the loan of money, was a question of fact for the jury, and the jury having, under the evidence, decreed the cancellation of the deed on the payment of the amount due, the verdict ought, under the evidence in the record, to stand.

Mortgage. Deed. Usury. Before Judge HARRELL. Randolph Superior Court. November Term, 1873.

Foster filed his bill against Monroe, making substantially the following case:

On December 31st, 1869, it was agreed between the com-

Monroe *vs.* Foster.

plainant and the defendant, that in consideration of the latter allowing a delay in the payment of $200 00, which he had previously loaned to the complainant, and to secure which complainant had executed a deed to him to a certain lot in the city of Cuthbert, and in consideration of the further advance of $800 00, the entire sum of $1,000 00, to become due on December 30th, 1870, complainant contracted that he would pay to defendant two and one-half per cent. per month as interest on the amount aforesaid for the year 1870. To secure the repayment of said sum of $1,000 00, with the usurious interest aforesaid, complainant conveyed by deed two other lots to said defendant, taking from the latter a bond to deliver up to complainant the deeds aforesaid upon the payment of the said sum of $1,000 00, and $25 00 per month as rent, for the year 1870, by the last day of said year, said bond to be void upon a failure to pay at the time specified. The two lots above mentioned are of the value of $3,000 00. The $25 00 termed rent is merely usurious interest. The whole transaction was simply a loan of $1,000 00 at two and one-half per cent. per month, but covered up under the forms aforesaid to evade the usury laws of this State. On January 1st, 1871, it was agreed between complainant and said defendant that the time of payment specified in said bond should be extended for another year upon the same terms. He has paid to said defendant $25 00 per month for the year 1870, and for eleven months of the year 1871, making in all $575 00 for the use of said $1,000 00.

The bill sets out numerous loans on the part of the defendant to the complainant at usurious rates of interest, and by a calculation seeks to show that the defendant had received in all $555 33 above the legal interest which should be credited on said $1,000 00.

Complainant tenders the balance due, after allowing the aforesaid credit, and prays that the deeds aforesaid may be decreed to be delivered up to be canceled, and that the defendant and the sheriff of Randolph county may be enjoined

from ejecting complainant from the possession of said city lots until a decree is rendered in this case.

The answer of the defendant denied that the deeds set forth in the bill were executed as security for money loaned, but asserts on the contrary, that the defendant expressly declined to lend any money to the defendant at the times said conveyances were made and delivered, and also declined to accept a mortgage on the property described in said deeds as security; that the deeds aforesaid, together with the bond executed by the defendant, express the precise contract that was entered into; denies that the two lots aforesaid were worth $3,000 00, as charged in the bill, and asserts them to be worth but $1,500 00; denies every allegation in the bill tending to show that the deeds and bond aforesaid were made to evade the usury laws, and that the monthly payments called rent were in fact usury.

The complainant, by his own evidence, and other witnesses, supported the allegations of his bill. He admitted that the defendant refused to lend him money or to take a mortgage as security, but asserted that the defendant, at the same time, stated that he could get the funds he wished if he would deed to him his lands, with the privilege of redeeming, in the meantime paying the rent therefor, as set forth in the bill.

The defendant testified substantially as set forth in his answer. He was corroborated by James M. Brooks as to the value of the two lots.

The following verdict was returned: "We, the jury, find a decree that the deeds from J. A. Foster to L. D. Monroe, dated 21st July, 1869, and December 30th, 1869, respectively, with the bond of L. D. Monroe to J. A. Foster, dated 30th December, 1869, be delivered up to be canceled, and that L. D. Monroe recover of J. A. Foster the sum of $625 65, to to be recovered, if not voluntarily paid by the said Foster, out of the lots mentioned in said deeds."

The defendant moved for a new trial upon numerous grounds, and amongst them, because the verdict was con-

Monroe *vs.* Foster.

trary to the law and the evidence. The motion was over-ruled, and the defendant excepted.

A. Hood; E. G. Raiford; L. D. Monroe, for plaintiff in error.

1st. There is no allegation of fraud, accident or mistake in making the deeds; they were all written by the complainant, and hence understood by him: Miller *et al. vs.* Cotton *et al.,* 5 Ga., 341.

2d. When a borrower files his bill in equity to be relieved against a usurious contract, the Court refuses relief, except upon the terms of his paying up the principal sum due and legal interest, notwithstanding the law may have declared the contract void: 10 Ga., 389; 4 *Ibid.,* 221; 9 *Ibid.,* 148, (5;) 5 Johns. Chancery Reports, 137; 1 Fonb., (*b*) 1, chap. 1, sec. 3; 4 Band., 415.

3d. A complainant in equity, who relies for relief upon a tender, must allege all the facts substantially which are necessary in pleading a tender at law: 10 Ga., 127; 34 *Ibid.,* 555.

4th. At law, a party must allege an offer to pay, unconditionally; that he is still ready to pay, and has always been ready to pay, and must do this in equity: 10 Ga., 127; 34 *Ibid.,* 555; 24 *Ibid.,* 211, 475; 1 Selwyn's *Nisi Prius,* (4th ed.) 140—and must be paid into Court when demanded.

5th. The true rule to determine whether the instrument of writing executed by Monroe and Foster make a mortgage or a conditional sale is, if the relation of debtor and creditor remain and a debt still subsists, it is a mortgage, but if the debt is extinguished by the agreement of the parties, or the money advanced was not a loan, and the grantee has the privilege of refunding, if he pleases, by a given time, and thereby entitling himself to a conveyance, it is a conditional sale: Galt *vs.* Jackson, 9 Ga., 151; 4 Kent, side page, 145, and note, and authorities there cited; 7 Cranch, 218; U. S. Condensed Reports, 479; Conways, ex'r, *vs.* Alexander; 9 Ala., 24; 8 *Ibid.,* 807; 40 Ga., 39; 32 *Ibid.,* 633; 30 *Ibid.,* 121; 8 Greenleaf's Reports, 246; French *vs.* Sturdvant, 7 Conn., 143; Hill-

house *vs.* Dunning, 1 Hilliard on Mortgages, 63. Suppose the houses had been destroyed, thereby greatly reducing the value of the lots below the money advanced, whose loss would it have been? Foster then refusing to pay the money, could Monroe have enforced a demand against him? Was there a subsisting debt due by Foster to Monroe, that he could have enforced?

6th. To show that a deed absolute in form, is in fact a mortgage, it must appear that all the parties to it considered it such, and it is not sufficient that the party executing it considered it such: 9 Miss., 201.

7th. To constitute a mortgage in Georgia, certain things are absolutely necessary. It must *clearly* indicate the creation of a lien, *specify the debt* to secure which it is given, and the property upon which it is to take effect: Code, sec. 1945; also see decision of last term. These requisites arise in Georgia because of our statute, that a mortgage is but the *security for a debt*. Neither the papers in this case nor the evidence, *clearly* indicate the *creation of a lien*, nor *specify the debt:* Burnsides *vs.* Bird Terry *et al.*, July term, 1872. If the Court thinks substantial justice done, we ask the decree be so moulded as to require the money paid into Court at once, or other direction that will secure Monroe in his money: Borum *vs.* Thweatt, January term, 1872.

8th. The intention of parties may differ among themselves; in such case, the meaning placed on the contract by one party and known to be thus understood by the other party, at the time, shall be held as the true meaning: Code, sec. 2714; see, also, 2713 and 2715.

WORRILL & CHASTAIN, for defendant.

McCAY, Judge.

We recognize fully the rule that if there be, in fact, a sale with an option in the seller to rebuy for a fixed sum at a fixed time, the transaction is a conditional sale and not a mortgage, and there is no equity of redemption after the day fixed for

the repurchase has passed.   See the case of *Steadman vs. Spence*, at the last term of this Court.   But it is perfectly settled, that it is a question of fact for the Chancellor, or, in this State, for a jury to determine what was the true intent of the parties, and that no mere words, whether in parol or in writing, are conclusive.   The whole transaction is to be looked to, and if, upon the whole, it appear that the loan of money and security for its repayment was, in truth, the purpose and intent of the parties, it will be treated as such, notwithstanding very strong language may be used at the time to give it a different appearance.

We do not think the evidence in this case is so strong in favor of a conditional sale, as to make the verdict illegal. True, the furnisher of the money did say he would not loan money, and the papers are careful to give the transaction the appearance of a sale.   But if all the circumstances are looked to, it will, we think, be ascertained that the jury have found about right.   It seems that Foster went to Monroe for money and offered a mortgage.   Monroe replied he would have nothing to do with mortgages, but Foster could get the money if he would *deed* him his land.   No price was agreed on, no *sale* was negotiated.   A deed was made out and signed and delivered, and a bond taken not to make titles, but to *redeliver the deed* when the money was paid with *the rent*.   The deed was not recorded, possession was not, in fact, changed.   There seems to have been several transactions of this sort, in each of which Foster paid the money and the parties stood as before.

Again, Foster wants money, and the same thing is done. He fails to pay, and another year is given.   It appears, too, that the property is or was, at the time, worth over double the amount of money advanced.   Here are several of the marks laid down in the books by which to distinguish a loan from a sale, and we are not surprised that the jury considered the transaction a loan, and the papers a mere scheme to hide the usury and put the borrower on such close terms as that he would be most sure to pay.   True, the defendant took no note, but having the deed and the other only his bond in

which the amount was fixed, he needed none. As a matter of course, if it was a loan in fact, Foster owed the money, and it was just as much in the defendant's power to explain and insist on it, as a debt, as in Foster's. If it was a debt at the call of Foster, it was also a debt at the call of Monroe. Were it Foster denying the debt and insisting on the sale, there would, perhaps, be different evidence. Monroe could doubtless show many *admissions* by Foster that it was a debt.

Upon the whole, as we have said, we do not feel authorized to interfere with the verdict. There is enough evidence to justify it, and in such cases, where the intent is the main issue, the verdict of a jury is an eminently proper finality of a dispute.

Judgment affirmed.