## DURDEN-POWERS COMPANY *v.* O'BRIEN *et al.*

1. A deed absolute in form may be shown to have been made to secure a debt, where the maker remains in possession of the land; but where the grantee in a deed or bill of sale absolute on its face is in possession of the property, such muniment of title shall not be proved (at the instance of the parties) by parol evidence to be only a mortgage, unless fraud in its procurement is the issue to be tried. In this case the maker of the deed absolute in form had surrendered possession to the grantee, and the latter was in possession at the time of the filing of the petition.

2. While the issue as to what was the true intent of the parties in the execution of a written instrument is frequently for the determination of a jury, who, upon consideration of all the facts and circumstances, are to determine whether a certain writing evidences an absolute conveyance or a mere security for the payment of a loan, nevertheless the construction of unambiguous contracts in writing is for the court, and in the state of the pleadings in this case the contracts attached as a part of the petition were so plain and unambiguous as not to require the intervention of a jury.

No. 6010. FEBRUARY 18, 1928.

Equitable petition. Before Judge Meldrim. Chatham superior court. March 26, 1927.

The petition of the Durden-Powers Company, after amendment, made substantially the following allegations: Joseph F. O'Brien and Max L. Wolff are in possession of real estate in the town of Tybee, Chatham County, Georgia, known as beach lots number 91, 92, and 93, which are definitely described, to which lots petitioner claims title by reason of the following state of facts: It obtained said property by warranty deed on March 1, 1913. On July 15, 1919, it conveyed said property, by deed to secure debt, to the Mercantile Bank & Trust Co., of Savannah, to secure an indebtedness of $28,000. There were renewals and transfers of this indebtedness and of the security deed, so that on March 20, 1921, the indebtedness amounted to $31,200, to secure which another deed was executed to said bank. In April, 1922, Joseph F. O'Brien agreed to advance to petitioner sufficient funds with which to pay off all of its indebtedness, including that above stated, aggregating approximately $35,000, "provided that your petitioner would execute a deed to him conveying said property. Your petitioner executed said deed on April 13, 1922, said deed reciting a

Accounts and Accounting, 1 C. J. p. 629, n. 27; p. 636, n. 2.
Mortgages, 41 C. J. p. 349, n. 37; p. 361, n. 94.

consideration of $10. The said Joseph F. O'Brien on said date executed an agreement with your petitioner, which agreement showed that the said deed was in truth and in fact, an equitable mortgage." Under the terms of the agreement O'Brien was to hold the deed in trust pending the repayment of the indebtedness due by petitioner, and was not to record deed; but on November 19, 1924, he had it recorded, in violation of the trust reposed in him. On December 12, 1924, O'Brien executed to Wolff a deed conveying said property to secure an indebtedness of $21,000 due by O'Brien to Wolff, and a subsequent deed to the same grantee was executed on January 1, 1926, in renewal of the prior indebtedness. In April, 1922, petitioner entered into an agreement with O'Brien, under the terms of which petitioner was to operate the bath-houses, restaurant, etc., located on the described property, and all profits derived from said operations should be applied to the extinguishment of the indebtedness due O'Brien by petitioner. Under said agreement O'Brien had a representative present on the premises to receive all moneys, pay all bills, and apply all net earnings as a credit on said indebtedness; and thereafter under said agreement O'Brien received from petitioner various sums of money to be so applied, the exact amount of which petitioner can not state, because O'Brien refuses to render an accounting. Petitioner can not attach an itemized statement of the indebtedness due by it and the credits which should be allowed, because the books of account and other papers showing the status of the account between the parties were all turned over to O'Brien in September, 1925, for the purpose of having the same audited; but O'Brien will not render any accounting. O'Brien has contracted to dispose of said property to Wolff for $40,000. The property is worth "the approximate sum of $75,000; and if the same should be handled judiciously for the interests of all parties concerned," it could be sold for said sum, so that any and all amounts, if any, which may be due defendant by petitioner could be paid in full and the equity of petitioner in said property be preserved.

The prayers of the petition are: (1) That an accounting be had between petitioner and O'Brien. (2) That the deed of April 13, 1922, be declared an equitable mortgage, and that O'Brien be required to render to petitioner a statement of the amount due, if any, under said mortgage. (3) That O'Brien be enjoined from

disposing of said property, and Wolff be enjoined from purchasing it. (4) That Wolff be required to produce for cancellation all deeds O'Brien may have made to him, conveying said property. (5) For general relief, etc. In response to special demurrer on the ground that the deed and agreements referred to in the petition were not attached thereto, the petitioner, by amendment, attached as exhibits the instruments referred to. The defendants demurred generally on the ground that the petition set out no cause of action. In the amendment it is alleged that since the petitioner remained in possession of the premises during the entire time from April 13, 1922, until April 1, 1926, and operated the pavilion and premises and applied all of the rents, incomes, etc., from said premises towards the payment of said indebtedness, saving and excepting a salary of $25 per week to W. D. Durden, president of the Durden-Powers Co., the conduct of the parties has shown that the writings set forth constituted an equitable mortgage in favor of O'Brien. The petitioner alleges two instances in which it had during said period given notes which had been indorsed by O'Brien, and paid, in part, out of the proceeds of the profits of the business. It is alleged that the real purpose of the petitioner surrendering possession to O'Brien on April 1, 1926, was to enable O'Brien to rent said property for the year 1926 for $7500, which was $1000 more than petitioner could secure as rental for said property, which $7500 so received by O'Brien should be credited on the indebtedness due by petitioner.

The deed from Durden-Powers Co. to O'Brien, dated April 13, 1922, heretofore mentioned, is in form a warranty deed, reciting a consideration of $10 and other good and valuable considerations, conveying to O'Brien beach lots 91, 92, and 93 in the town of Tybee, Chatham County, Georgia, together with all outhouses, edifices, buildings, liberties, privileges, etc., thereunto belonging, and also all personal property of every kind situated in said buildings, and also the equity of redemption which the grantor has or may hereafter have by virtue of the several deeds to secure debts thereinafter specified. The conveyance is made subject to the indebtedness due by the grantor to the Mercantile National Bank (referred to in the original petition), which indebtedness is assumed by O'Brien as a part of the consideration of the deed. The agreement executed contemporaneously with this deed recites the

indebtedness of the company to the Mercantile National Bank; the appointment by said bank of a trustee to sell said property upon default, in accordance with the provisions of its deeds; the sale of said property for the sum of $47,025, failure of the purchasers to pay the purchase-price on the day of sale, ensuing litigation, and suit by the purchasers for specific performance, and "whereas the said [O'Brien] has agreed to pay the sum of $5,974.86 and to assume the indebtedness due to the Mercantile National Bank of Savannah amounting to $27,461.44, in consideration of the transfer to him of the said property by [Durden-Powers Co.], and [the company] has contemporaneously herewith as a part of the same transaction conveyed said property in accordance with said agreement; and whereas it is further agreed that the said [O'Brien] will lease the said property to [Durden-Powers Co.] for the period of one year and will give [that company] an option to repurchase the said property at or before the expiration of the said period of one year from the date hereof, at and for the sum of $5000 over and above all amounts paid out or assumed by [O'Brien] in accordance with the terms of this agreement and upon certain other conditions and terms hereinafter stated; it being understood and agreed, however, that if the said litigation has not terminated three months before the expiration of said period of one year, then said option to purchase herein given . . shall continue until the expiration of three months after the final conclusion of said litigation."

It is therefore mutually covenanted and agreed: (a) That O'Brien leases the premises and the personal property to Durden-Powers Co. for the term of one year from date; "or if said litigation does not end three months before the expiration of one year, then . . this lease shall continue in force until the expiration of three months after the final conclusion of said litigation." (b) That on Monday morning of each week during the Tybee season Durden-Powers Co. shall deliver and pay over to O'Brien the net proceeds of said business, such net proceeds to consist of gross receipts less amounts necessary to pay for supplies, wages, etc., it being agreed that the wages paid shall include the sum of $25 per week to be paid W. D. Durden and T. A. Powers for their services to the operation of said business. The expenses to be incurred in the conduct of such business shall be at all times sub-

ject to the direction and control of O'Brien. (c) Out of the sums so paid to O'Brien he shall pay himself, as rental for said period, "a sum equal to all of the carrying charges of said property, including taxes, insurance, expenditures for the maintenance and repairs to and replacements of said property, interest, including interest upon the indebtedness due the Mercantile National Bank of Savannah, and assumed by" O'Brien, as well as all other interest and carrying charges. All amounts received by O'Brien over and above such carrying charges shall be placed in a separate bank account and held by O'Brien to the credit of Durden-Powers Co., "and applied as hereinafter provided." (d) That Durden-Powers Co. will keep accurate books and accounts, accessible to O'Brien, and O'Brien shall have the right to place in charge of such books a competent man, selected by him, whose salary shall be paid out of the proceeds of said business. (e) That in the event the petitioners for specific performance should prevail, O'Brien shall have the right to reimburse himself for all amounts paid by him for or on account of said property or business and any indebtedness thereon, as well as any damages recovered, with interest at the rate of eight per cent. per annum. In the event said litigants recover damages, O'Brien shall have the right to receive from the trustee the sum of $47,025, the amount bid by the purchasers at the trustee's sale, and to pay out of said sum any amount remaining unpaid, including the indebtedness due the Mercantile National Bank of Savannah, "and then to pay the balance, if any, to said" Durden-Powers Company, and that company appoints O'Brien its lawful attorney in fact to receive such sum from said trustee. (f) That in the event said litigants do not prevail, then "title to said property, which has vested in [O'Brien] under and by virtue of the deed . . made contemporaneously herewith, shall be subject only to the right of [Durden-Powers Co.] to repurchase said property as herein stated." (g) In the event the litigants do not prevail, the Durden-Powers Co. shall have the right on or before one year from date, or, if such litigation does not terminate three months before the expiration of said period of one year, then within three months after the final conclusion of said litigation, "to repurchase from said [O'Brien] the said hereinbefore described property at and for the sum of $5000 over and above all

amounts paid out or assumed by said [O'Brien] in accordance with the terms of this agreement, and shall have the right to have applied to the purchase-price . . all amounts coming into the hands of [O'Brien] from the proceeds of the operation of said business after the payment of all of the carrying and other charges hereinbefore provided for." (h) That in the event W. D. Durden and T. A. Powers, or either of them, in the sole judgment of O'Brien, should fail to faithfully perform their duties in the operation of said business, or should Durden-Powers Co. fail to comply with any of its agreements herein set forth, O'Brien may cancel the right of such company to the use and possession of said property and may take immediate possession of all of said property; "provided nevertheless the said Durden-Powers shall have the right to repurchase said property as hereinbefore provided." (i) Neither Durden-Powers Co. nor Durden or Powers shall assign or transfer this agreement without the written consent of O'Brien.

In the supplemental agreement of May, 1924, the agreement of April 13, 1922, is denominated "a certain lease and option agreement," and is so amended and changed as to include the following additional covenants: First: The "lease and option agreement of April, 1922, is hereby extended as to time until October 1, 1924." Second: That under the agreement of April, 1922, O'Brien selects T. A. Powers as a competent man to be placed in charge of the books, money, and the superintendence of said business, and Powers shall render to O'Brien weekly statements of the business done and amounts received, and shall pay to O'Brien the sums earned by said business over and above the operating expense. This method is selected by O'Brien in lieu of the methods set forth in paragraphs B and C of the agreement of April, 1922, "but is without change in so far as the purposes for which moneys can be used in discharge of the obligations set forth in said agreement are concerned. Third: That all covenants in the agreement of April, 1922, not inconsistent with the provisions of this agreement are expressly kept in force. So far as appears from the record, this agreement was signed only by the company.

In an "agreement made and entered into this —— day of May, 1925, between Joseph F. O'Brien, hereinafter called the 'lessor,' . . and the Durden-Powers Company, hereinafter called the

'lessee,' " it is recited that the lessee is desirous of renting from the lessor property known as beach lots 91, 92, and 93, and also personal property on said premises, which personal property is described in a deed recorded (indicating the record book and page) ; and that said lessee is unable to give security for the rental of said premises, and it agrees, as a protection for the payment of rent, to allow the lessor the right at any time to place in charge of the books, payment of bills, etc., a person selected by him. It is agreed: 1st: That the lessor has leased and rented to said lessee beach lots 91, 92, and 93, as well as all personal property thereon. Tenancy to expire October 15, 1925. 2d: That rentals from said premises "shall be the taxes and water rent for the year 1924, up until October, 1925, due to the town of Tybee, the taxes due the State and county for the year 1924 up and until October, 1925, interest on the $43,000 at 8% per annum for the year 1924, and carrying charges on the insurance now in force on the property, and the expenditures for the maintenance and repairs to the replacement on said property, and expenses of the person placed in charge of the money by the said lessor, these amounts to be paid out of the cash received by the said lessor, . . and all other carrying charges that shall be necessary . . on the property up to and until October 15, 1925. It is understood and agreed that the said representative of the lessor shall handle the money in bank, as agreed between the parties hereto, and that the said lessor shall have the privilege of distributing said money as in his judgment is necessary." 3d: That the lessee shall, with the assistance of the representative of the lessor, keep full and accurate books and accounts, and "that no money shall be expended from the moneys collected, or raised from the assets of the said business, except the wages of the said W. D. Durden, which are to be paid weekly, at the rate of $25 per week, and current expenses connected with the conducting of said business," which expenses shall be at all times subject to the direction and control of the lessor.

To the petition as amended the defendants filed motions to strike numerous specified portions and demurred "to the petition generally, and say that the petition sets out no cause of action against them, or either of them." The trial judge entered the following order: "While I have carefully considered the special de-

murrers, in the view I take of this case I do not deem it necessary to decide them. In my opinion the general demurrer should be sustained, and is sustained. The restraining order is set aside, and the temporary injunction must be refused. I am forced to this conclusion because on 13th April, 1922, for valuable consideration the plaintiff made, executed, and delivered an absolute deed with full covenant of warranty to O'Brien, which deed was recorded on November 19, 1924. There was no bond to reconvey. There is no suggestion that this deed was made through fraud, accident, or mistake. The defendant, O'Brien, entered into actual possession of the premises described on April 1, 1926, and was in such actual possession on February 19, 1927, when this action was brought. Neither argument nor authority is necessary to show that when a deed is absolute on its face, and the grantee in possession, the grantor can not by parol vary the terms of the deed by showing it was only a deed to secure debt." The plaintiff excepted to the dismissal of the petition on demurrer.

*Oliver & Oliver,* for plaintiff.

*Bouhan & Atkinson,* for defendants.

RUSSELL, C. J. This is not a case involving the admissibility of parol evidence to alter, vary, or contradict a written instrument, which is forbidden by the Civil Code (1910), § 5788. The judgment was upon a demurrer to the petition; and the facts which are relied upon in the effort to show a deed executed and delivered by the plaintiff to the defendant was not an absolute conveyance, but rather a security for debt and in effect an equitable mortgage, are contained in written contracts incorporated in the pleadings. For this reason we are of the opinion that the contention of learned counsel for the plaintiff, that the court should not have sustained the general demurrer, because issues of fact were presented which should have been submitted to the jury, can not be sustained. In this case the issue must be determined by the construction of the deed and a contemporaneous contract as affected by a contract entered into by the parties subsequently thereto. The construction of contracts is the prerogative of the courts, which is delegated to the jury only when there are ambiguous expressions in the contract, and resort must be had to aliunde testimony in order to clarify the meaning of the language used as it was understood by the parties, and thus to make plain their real

intention. There is no ambiguity in the contracts embodied in the record in this case; and it is admitted in the petition that the defendant was in possession of the property at the time the action was instituted. The deed from Durden and Powers Company (which will hereinafter be denominated as "the company") to Joseph F. O'Brien, dated April 13, 1922, was executed on the same day as the contract by the terms of which O'Brien agreed, upon certain named conditions being fulfilled, to reconvey the same property to the company; and hence these two writings very properly should be construed as if the stipulations and covenants of each were a part of the other. However, construing these two writings together, we are of the opinion that the agreement of O'Brien to reconvey the tract of land involved in this controversy does not amount to a bond for title or a bond to reconvey upon payment of a debt which the plaintiff says was merely to be secured by the execution of the deed, and contends that for that reason the conveyance was not absolute. Properly construed, the contemporaneous contract of April 13, 1922, was nothing more than an option to buy or repurchase the land which the company had conveyed to O'Brien.

As frequently held by this court, there is a clear distinction between the retention of equitable title in property which has been pledged by mortgage as security for indebtedness and the sale of an option to repurchase the property. In the case at bar O'Brien agreed, upon compliance with certain conditions not necessary to repeat here, and within a certain limit of time, to sell the company the same land as it had conveyed to him upon the payment of the sum of $5,000 in addition to the various charges specifically stated in the writings, as well as the amount of the former indebtedness of the company (which had been assumed by O'Brien), with eight per cent. interest thereon. The mere fact that the larger portion of the consideration, upon payment of which O'Brien was to reconvey the property to the company, consisted of the amount that O'Brien had paid or was to pay in the discharge of prior debts of the company does not raise any implication that the deed, although contemporaneous, was not what it purported to be, an absolute conveyance, and not a mere security for debt. In the absence of any plea that the additional sum of $5,000 exacted by O'Brien as a condition precedent to his reconveying the premises

to the company was a mere cover for the purpose of collecting usury (and only in the event such plea had been interposed), it may be assumed that the deed from the company evidenced a complete sale, and that O'Brien, being of the opinion that he had bought a good bargain, fixed the purchase-price at which he would sell the property, in case the company saw fit to exercise the option, at a figure which he determined to be its value to himself as the owner. This court has several times decided that stipulations in so-called leases providing for the payment of named funds as rent may be shown by parol to be nothing more than provisions for the collection of exorbitant and unlawful rates of interest; but there is no suggestion in this case that the rental stipulated to be paid, in the writing executed contemporaneously with the deed, was intended to be paid as interest on the debt of the plaintiff which was to be paid by O'Brien. Great stress is laid on the provision of the contract of April 13, 1922, by the terms of which O'Brien was created attorney in fact for the company, and was to keep in a separate bank account any surplus remaining from the proceeds of the business conducted at this seashore resort, and that this surplus was to be deducted from the purchase-price of the property should the company desire to avail itself of the option to buy. This stipulation might afford conclusive evidence that the original deed was intended only as security for debt, but for the fact that the contract with which we are now dealing does not place any obligation whatever on the company to buy the property in question.

We think this determines the character of the writing, and plainly shows it to be nothing more than a mere option or a right to elect to buy on the part of the company; whereas had the instrument partaken of the nature of a bond for title in any sense, there would have been not only an agreement on the part of O'Brien to sell but an express obligation on the part of the company to pay the stipulated purchase-price. The option to repurchase shows that the actual consideration of the deed was $5,974.86 cash and the assumption of mortgages aggregating $27,461.44, to which was added $5,000 as a profit to O'Brien should the company elect to purchase the property. In paragraph (f) of the first agreement appears the only reference to the deed, as follows: "It is further understood and agreed that in the event the said F. H.

47

Haar and Rose Eicholz shall not prevail in the said litigation now pending, then and in that event the title to said property which has vested in the said party of the first part under and by virtue of the deed from the said party of the second part to the said party of the first part, made contemporaneously herewith, shall be subject only to the right of the said party of the second part herein to repurchase said property as herein stated." The words "the title to said property . . shall be subject only to the right of the said party . . *to repurchase said property* [italics ours] as herein stated," it is insisted, supports the contention of the plaintiff that the deed was merely given as security for debt, and not as an absolute conveyance; *but* in a second agreement of May, 1924, it is recited that the Haar and Eicholz litigation was not terminated until April, 1924, and that the parties desire to enter into certain additional covenants and agreements, and do covenant that "the lease and option agreement contained in the agreement of April, 1922, is hereby extended as to time until October 1, 1924." Under this agreement the option to repurchase expired on October 1, 1924.

From the execution of the deed on April 13, 1922, until October 1, 1924, the plaintiff was in possession of the property, and, indeed, remained in possession until April, 1926, by reason of which the plaintiff for that period stood in a much stronger position as related to its contention that the deed was in effect an equitable mortgage or security for indebtedness than at the time of the filing of the petition in this case. However, in May, 1925, the company, without any reservation whatever, except one clause which will be referred to hereafter, acknowledged the title of O'Brien by leasing the premises conveyed by its deed for the taxes and water rent for the year 1924 until October, 1925, due to the Town of Tybee, the taxes due the State and county for the year 1924 until October, 1925, interest on $43,000 at eight per cent. per annum for the year 1924, carrying charges on the insurance in force on the property, the expenditures for the maintenance and repairs of said property, the expense of the person placed in charge of the money by the lessor (these amounts to be paid out of the cash received by said lessor through his said representative), and all other carrying charges necessary for the expenditures on the property until October 15, 1925. The only provision in this contract of

rental which might by any construction seem to indicate any interest in the premises on the part of the plaintiff is that in which it is said: "It is understood and agreed that the said representative of the said lessor shall handle the money in bank, as agreed between the parties hereto, and that the said lessor shall have the privilege of distributing said money as in his judgment is necessary." But bearing in mind that by its terms the contract of May, 1924, terminated the option as of October 1, 1924, and the further fact that the words in this stipulation that "the said representative of said lessor shall handle the money in bank, as agreed between the parties hereto" are not explained by any statement or provision in the later contract, the clause of the contract which we have quoted in full above can not be construed so as to imply the existence of any right in the plaintiff in derogation of the title of the defendant O'Brien as its landlord. So we are of the opinion that the general demurrer was properly sustained.

The Civil Code (1910), § 3258, provides that "A deed or bill of sale, absolute on its face and accompanied with possession of the property, shall not be proved (at the instance of the parties) by parol evidence to be a mortgage only, unless fraud in its procurement is the issue to be tried." Learned counsel for the plaintiff insists that "the agreement of April 13, 1922, and the supplemental agreements of May, 1924, and May, 1925, show conclusively that the plaintiff remained in physical possession of the property from April 13, 1922, through the season of 1925. Plaintiff alleged that its physical possession of said property was surrendered in April, 1926, in order that an advantageous lease of said property might be effected by O'Brien; and "Therefore the possession of said property was not surrendered at the time of the execution of said deed, neither was it intended that possession of the property should be surrendered by the plaintiff." Conceding that possession of the property was not surrendered at the time of the execution of the deed (for this would seem to be immaterial), and that at that time the plaintiff did not intend to surrender possession of the property, it nevertheless appears from the petition that it had surrendered possession several months prior to the filing of the action in this case. Nothing is better settled than that "A deed absolute in form may be shown to have been made to secure a debt, where the maker remains in possession of the land con-

veyed." *Mercer* v. *Morgan,* 136 *Ga.* 632 (71 S. E. 1075); *Berry* v. *Williams,* 141 *Ga.* 642 (81 S. E. 881); *Waller* v. *Dunn,* 151 *Ga.* 181 (106 S. E. 96); *Southern Ry. Co.* v. *Williams,* 160 *Ga.* 541 (128 S. E. 681). It is also well settled that where the maker remains in possession of the land, so that parol evidence is admissible, then the issue as to the purpose and intent of the parties, that is, whether the parties intended the transaction to bespeak security for a loan or an absolute sale, is a question for the jury. As said by Mr. Justice McCay in delivering the opinion of the court in *Monroe* v. *Foster,* 49 *Ga.* 514, 519: "It is perfectly settled, that it is a question of fact for the chancellor, or, in this State, for a jury to determine what was the true intent of the parties, and that no mere words, whether in parol or in writing, are conclusive. The whole transaction is to be looked to; and if, upon the whole, it appear that the loan of money and security for its repayment was in truth the purpose and intent of the parties, it will be treated as such, notwithstanding very strong language may be used at the time to give it a different appearance." However, as we have already shown, the plaintiff did not remain in possession and was not in possession at the time of beginning the suit; and in addition, as pointed out by the learned trial judge in his order dismissing the petition, there is no allegation that there was any fraud in the procurement of the deed in this case, or that any of the contracts were tainted with fraud; and the language of section 3258, supra, is to the effect that a deed apparently absolute shall not be proved to be a mortgage "unless fraud in its procurement is the issue to be tried," and in this case, at the time of the institution of the suit, O'Brien held a warranty deed absolute on its face, and was in possession of the property. The petition therefore was fatally defective in two respects: (1) Because, under the decisions cited above, it is only where the maker of the deed absolute in form remains in possession of the land that he can prove such deed absolute to have been made as security for a debt. (2) O'Brien, having been permitted to go into possession and holding under a deed absolute on its face, his muniment of title can not be proved by parol evidence to be a mortgage, in the absence of any allegation that there was fraud in the procurement of the writing.

The third contention of the plaintiff, as stated in the brief, is "That in the event said instrument executed on April 13, 1922,

was in truth and in fact a deed conveying the title to said property to the said Joseph F. O'Brien, and that in the event the agreement made on the same date and contemporaneously with said deed and as a part of the same transaction (as recited in the 7th 'whereas' paragraph of said agreement) was an option to repurchase (as contended by the defendants), then said option has been, and was, exercised by the plaintiff when the plaintiff permitted the defendants to operate the property and apply all funds derived from such operation toward the payment of the indebtedness, and that the defendant . . should reconvey the property to the plaintiff." We have already held that the agreement executed contemporaneously with the deed of April 13, 1922, was an option to repurchase, as denominated by counsel for plaintiff in error in his contention; but we can not concur in the conclusion reached by counsel that the option was exercised by the plaintiff when it permitted the defendants to apply all funds towards the payment of the indebtedness. To reconvey the property for this reason would be to make a new and altogether different contract from that set forth in the original agreement. This paper specifically provided for the payment of certain funds and an additional $5000 of profit; and before the plaintiff could seek a reconveyance of the property it must necessarily show that sufficient funds had been derived from the operation of the property to pay the amounts set forth in the option. There is no allegation upon this subject which is so definite as to amount as to enable the jury to find that such funds were sufficient to pay the purchase-price. Furthermore, as already stated, the option had been abandoned; the plaintiff had entered into a subsequent contract of rental, acknowledging itself to be a tenant; and finally, at the conclusion of its tenancy, had surrendered possession, thus making the original contract completely functus officio.

It is further insisted that in any event the plaintiff is entitled to an accounting with O'Brien, and for this reason, if no other, the general demurrer should not have been sustained. It is not alleged that an accounting would disclose an indebtedness by O'Brien to the company. Nowhere in the petition is it alleged that any amount was received by O'Brien from the company over and above the carrying charges to be placed in a separate bank account, or that there was ever any amount earned by the company

over and above the carrying charges. The facts stated did not authorize or require that an accounting be had. "In a proceeding to obtain an accounting, the complainant is not obliged to show how much is due. But the law will not do a vain thing and order an accounting, when the petitioner does not aver facts sufficient to indicate that something will be found to be due him by the defendant." *Gould* v. *Barrow,* 117 *Ga.* 458 (43 S. E. 782). It is stated in 1 C. J. 629, § 87, that "Generally, when one party calls upon another for an accounting, it must be made to appear that the accounting will be available to complainant, as that there is something in the hands of defendant due to complainant; in other words, there must be something to be accounted for before a reference will be ordered." Following the same reason as that in *Gould* v. *Barrow,* it is said in 1 C. J. 635, § 104, that "As ordinarily a court of equity will not decree an accounting if it is apparent that nothing can be found to be due upon the accounting, the bill should allege that there is an indebtedness due from defendant to plaintiff." The plaintiff does not aver sufficient facts to indicate that there was anything due the plaintiff by the defendant, and the court would not have been authorized to over-rule the general demurrer merely for the purpose of retaining the cause in order that an accounting might be had between these parties.          *Judgment affirmed. All the Justices concur.*

ATKINSON, J., and HILL, J., concur in the result.